**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 453, Respondent.**

**No. 81–1491.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1981.

Decided Jan. 21, 1982.

---

Richard Michael Fischl, William R. Stewart, Deputy Asst. Gen. Counsel, David R. Marshall, Atty., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., for petitioner.

Benjamin J. Francka, Springfield, Mo., for International Brotherhood of Electrical Workers, AFL–CIO, Local 453.

Before HENLEY and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

HENLEY, Circuit Judge.

This case is before the court on application of the NLRB for enforcement of its order against IBEW, based on a finding that the union violated the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq., (1) by forcing non-member travelers [1] to quit their jobs to provide openings for local members, (2) by operating the union's exclusive hiring hall in a discriminatory fashion, and (3) by threatening to file, and later filing, intraunion charges against non-member Rodman in retaliation for his

---

* The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. Travelers are workers who are not members of Local 453, but who are members of another local affiliated with the IBEW and who have obtained a traveling card certifying their membership status and classification.

complaints about the discriminatory operation of the hiring hall. For the reasons to be stated, we grant the Board's application for enforcement of portions of the order pertaining to (1) and (2) above, but deny enforcement of that portion of the order pertaining to the filing of intraunion charges against Rodman.

The dispute in this case is based on a collective bargaining agreement between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers (IBEW). Pursuant to this agreement, the union operated an exclusive hiring hall and registered each applicant in the highest of four priority classifications for which he was qualified. The agreement also provided for an appeals committee to hear complaints concerning the administration of the referral procedure.

The controversy began in November, 1977 when thirty-two travelers, employed by Sachs Electric Company on a construction project near Springfield, Missouri, were asked by union steward J. C. Danner and the business manager of the hiring hall, Jim Hensley, to quit their jobs to create openings for unemployed local members. It appears that some of the travelers, including Bill Rodman and Larry Nolan, were reluctant to quit and voiced opposition, but by December 1 all the travelers either had quit or had been laid off.

Several months later, on February 28, 1978, Rodman and Nolan, who both had been registered in Book II, approached Hensley and asked to sign Book I, the highest priority classification. Hensley would not allow them to sign Book I; nor would he allow them to sign Book II with the notation by their names "signed under protest." Hensley claimed that he doubted their qualifications, but Rodman and Nolan, who were in fact qualified, alleged that Hensley did not ask for proof of their qualifications, but rather told them that travelers could not sign Book I. Rodman and Nolan left without signing either book, and later that day complained to Jack Moore, IBEW International Vice President, who told them that they must file a grievance in writing. On March 22 Hensley again refused to let them sign Book I, and, in the latter part of April, they filed complaints with the appeals committee. Subsequently they repeated their requests to Hensley on several occasions, but he continued to refuse in spite of offered written proof of their qualifications, stating that the matter was in the hands of the appeals committee.

Also during this time Hensley threatened to file, and did in fact file, intraunion charges against Rodman, claiming that Rodman had made false statements about him in a letter to Moore, and that Rodman had released confidential union information to his attorney. Although found guilty by the Local Union Executive Board, Rodman's conviction was reversed by Moore on technical grounds.

The appeals committee met on June 12, 1978. The only issue addressed was whether Hensley had willingly and knowingly violated the collective bargaining agreement by refusing to allow Rodman's and Nolan's requests to sign Book I on February 28 and March 22. The committee issued a decision on July 3 finding Hensley's explanation that his refusal was based on Rodman's and Nolan's failure to present written proof that they had passed a journeyman's examination, to be an adequate defense to the charge of discrimination. The committee also found that Rodman and Nolan were qualified to sign Book I, and it appears that they subsequently did so and have received several referrals from that classification.

Three issues were presented to the administrative law judge concerning (1) the union's request for travelers to quit their jobs, (2) Hensley's refusal to permit Rodman and Nolan to sign Book I, and (3) the intraunion charges against Rodman. The ALJ concluded that the union had violated the Act based on the second and third issues, but found that the requests for the travelers to quit their jobs were not coercive and therefore not violative of the Act. The Board adopted the conclusions and recommendations of the ALJ with respect to issues (2) and (3), but two of the three

members disagreed with the ALJ's conclusion regarding the first issue. Thus, the union was found in violation of the Act on all three grounds.

*I.  Coercive Requests for Travelers to Quit Their Jobs.*

The union contends that the Board's disagreement with the ALJ's findings and conclusions regarding this issue is not supported by substantial evidence. The ALJ, it is submitted, properly evaluated the evidence and credibility of the witnesses and concluded that there was no credible testimony to support a finding "that Hensley or Danner did any more than request the travelers to quit."

■ The Board, however, stated that "it strains credulity, and indeed it contradicts record testimony, to suggest ... that all the travelers who quit their jobs on the Sachs project did so as a 'courtesy' to their Local 453 brethren." The Board relied on credited testimony indicating that several "requests" were made to the travelers to quit their jobs because members of the local were unemployed, and that union steward Danner had stated, in response to Rodman's expressed reluctance to quit, that, "If I was in someone else's jurisdiction and I was asked to leave I certainly would do so." The Board also emphasized the following points: that within a few days of the "requests" all travelers had quit or had been laid off; that travelers in these circumstances were aware that the union controls their right to work in that jurisdiction; and that similar requests had sometimes been accompanied by threats of violence or actual violence. We conclude that there was substantial evidence on the record to support the Board's finding that the union violated the Act by coercively requesting the travelers to quit their jobs.

*II.  Registration in Book I.*

In resisting enforcement of this portion of the Board's order, the union first argues that the Board abused its discretion by not deferring to the appeals committee's decision that Hensley's refusal to permit Rodman and Nolan to sign Book I was not a willful and knowing violation of the bargaining agreement. The union urges that *Spielberg Manufacturing Co.*, 112 N.L.R.B. No. 139, 36 L.R.R.M. 1152 (June 8, 1955), dictates deferral in this case because the issue was litigated in a fair and regular proceeding and the result was not repugnant to the policies of the Act. The Board adopted the ALJ's finding that by limiting the issue to whether Hensley willingly and knowingly violated the agreement, "[t]he statutory propriety of Hensley's conduct was left unscrutinized."

■ Regarding the merits of the issue, the Board found Hensley's explanations belated and inconsistent, and concluded that, based on evidence that Hensley failed to ask for written proof and that Hensley had stated that Book I was for local members only, Hensley improperly refused to permit Rodman and Nolan to sign Book I. We think this conclusion is supported by the record. It is undisputed that Rodman and Nolan were entitled to highest priority registration. In addition, the Board asserts, the record indicates that Hensley had reason to know, based on Rodman's and Nolan's dues receipts and his acquaintance with the two men for several years, that they had passed the journeyman's examination. Furthermore, there was no evidence of a policy requiring written proof before signing Book I.

*III.  Intraunion Charges.*

■ In reviewing this portion of the Board's order, we restate the bases of Hensley's charges against Rodman. The first charge was that Rodman, in a letter to Moore, made false statements against Hensley to the effect that Hensley had wrongfully passed over Rodman and referred a Book III registrant. Hensley's alleged misconduct occurred after Rodman's and Nolan's request to sign Book I had been denied and, as stated earlier, after they had left without signing either Book I or Book II. Thus, strictly speaking, Hensley could not have wrongfully passed over Rodman since, at that time, Rodman was in fact not registered at all.

The Board found that the filing of intraunion charges against Rodman based on Rodman's false statements to Moore was unnecessary and that Hensley could have resolved the matter by simply writing or calling Moore. We are not convinced, however, that a phone call or letter would have adequately cleared Hensley of the false statements made against him. As business manager, Hensley was required by the bargaining agreement to refer registrants according to priority. The Board's characterization of Rodman's false statement as a mere overstatement underestimates the relatively serious nature of Rodman's accusation and overlooks the impact such a claim could have on Hensley's reputation and official actions within the union. We conclude that Hensley was entitled to answer Rodman's accusation through official procedures.

Hensley's second charge against Rodman was based on Rodman's alleged release of confidential information to his attorney. This "confidential information," the Board found, consisted of copies of the IBEW constitution, the Local's by-laws, and the bargaining agreement. We agree with the Board that this charge against Rodman was exaggerated. We note, however, that there were excesses on both sides, and we think that in the circumstances this issue is relatively insignificant compared to the false statements made by Rodman against Hensley. We therefore decline to enforce that portion of the Board's order finding the union in violation of the Act based on the filing of intraunion charges against Rodman.

■ Finally, we note that the issue raised by the union regarding the computation of back pay is not an appropriate issue for this court to address at this time but should instead be resolved in a compliance proceeding.

For the above reasons, we grant enforcement of the Board's order with respect to the coercive requests for travelers to quit their jobs and Hensley's refusal to allow Rodman and Nolan to register in Book I, but decline to enforce the order with respect to the filing of intraunion charges against Rodman.