ST. CHARLES JOURNAL, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 81–2089.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1982.

Decided June 4, 1982.

Timothy L. Stalnaker, St. Louis, Mo., for petitioner, St. Charles Journal, Inc.; Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., of counsel.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Elaine Patrick, Atty., N. L. R. B., Washington, D. C., for respondent.

Before BRIGHT, HENLEY and JOHN R. GIBSON, Circuit Judges.

HENLEY, Circuit Judge.

St. Charles Journal, Inc. (the Company) petitions for review of an order of the National Labor Relations Board (NLRB) requiring it to bargain collectively with Miscellaneous Drivers, Helpers, and Public Employees Local 610, the Union certified as the exclusive representative of fourteen newspaper carriers. The NLRB has filed a cross-application for enforcement of its bargaining order. We deny the petition for review and grant the application for enforcement of the Board's order.

The Company publishes and distributes the St. Charles Journal (the Journal), a newspaper consisting of seventy-five per cent advertisements and twenty-five per cent news items of interest to residents of St. Charles County, Missouri. The three editions published each week are distributed free of charge to each residence and retail establishment in the County. Each of these editions regularly contains up to twelve advertising supplements. The newspaper carriers, whose status is at issue in this case, pick up the Journal and any supplements directly from an independent printer and make door-to-door deliveries to County residences and businesses.

In March, 1981 Local 610 filed a petition seeking to represent Journal carriers. The Company opposed the petition, contending that the carriers were not employees, but rather independent contractors excluded from coverage under the National Labor Relations Act (NLRA).[1] After a full hearing on the carriers' status, the Acting Regional Director determined that they were Company employees.

Following its victory in the ensuing representation election, Local 610 submitted a bargaining request to the Company. When the Company refused to bargain, the Union filed the unfair labor practice charge that is the subject of this appeal. In answering the charge the Company reiterated its contention that the carriers were independent contractors. After finding that the issue raised by the Company in the unfair labor practice proceeding was or could have been litigated in the representation proceeding and that the Company had not offered any new evidence or shown special circumstances requiring the Board to reexamine its ruling in the representation proceeding, the NLRB granted summary judgment in favor of the General Counsel and entered the bargaining order that is now before this court on the Company's petition for review and the Board's cross-application for enforcement.

■ It is well settled that "the distinction between employees and independent contractors must be made by the application of general agency principles on a case-by-case basis." *NLRB v. Warner*, 587 F.2d 896, 899 (8th Cir. 1978), citing *NLRB v. United Insurance Co.*, 390 U.S. 254, 256, 88 S.Ct. 988, 989, 19 L.Ed.2d 1083 (1968). This determination requires an examination of the degree to which the principal has the right to control the details of the agent's performance. *See NLRB v. A. Duie Pyle, Inc.*, 606 F.2d 379, 382 (3d Cir. 1979); *NLRB v. Warner*, 587 F.2d at 899. All incidents of the work relationship must be assessed and weighed. *NLRB v. Warner*, 587 F.2d at 899. Among the factors that must be considered are

> the right to hire and discharge persons doing the work, the method and determination of the amount of the payment to the workmen, whether the person doing the work is engaged in an independent business or enterprise, whether he stands to make a profit on the work of those under him, the question of which party furnishes the tools or materials with which the work is done, and who has control of the premises where the work is done. In addition ... consideration must be given to other factors, such as whether the relationship is of a permanent character, the skill required in the particular occupation, and who designates [...] where the work is to be performed.

*Id., quoting Minnesota Milk Co. v. NLRB*, 314 F.2d 761, 765 (8th Cir. 1963).

---

1. Section 2(3) of the NLRA, 29 U.S.C. § 152(3) (1976) provides:

    The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor ....

■ Since the question of a worker's status requires reference to common law agency principles, its resolution does not call into play the special expertise developed by the Board in interpreting the provisions of the NLRA. *See NLRB v. Warner*, 587 F.2d at 901, *citing NLRB v. United Insurance Co.*, 390 U.S. at 260, 88 S.Ct. at 991; *NLRB v. Deaton, Inc.*, 502 F.2d 1221, 1223 (5th Cir. 1974), *cert. denied*, 422 U.S. 1047, 95 S.Ct. 2665, 45 L.Ed.2d 700 (1975). When, however, the Board makes its determination after a full hearing at which the parties have the opportunity to examine and cross-examine witnesses and present oral argument, we will not displace its choice between two fairly conflicting views of the evidence merely because we might justifiably have reached a different result were the matter before us de novo. *See NLRB v. Suburban Ford, Inc.*, 646 F.2d 1244, 1248 (8th Cir. 1981); *NLRB v. Warner*, 587 F.2d at 901; *NLRB v. Deaton, Inc.*, 502 F.2d at 1223. The Board's findings will be conclusive if they are supported by substantial evidence. *Id.*

■ In the instant case the Acting Regional Director made the following findings and conclusions:

In view of the ... record as a whole, I conclude that the carriers ... bear slight resemblance to independent businessmen whose earnings are controlled by self-determined policies, personal investment, and expenditure, and market conditions. The carriers are paid a flat rate per 1,000 papers delivered plus a mileage allowance designed to equalize earnings on the routes, plus an insertion rate for delivering advertising supplements the number of which vary from issue to issue due to circumstances beyond the carrier's control. Carriers are required to deliver to every residence and retail establishment on their routes. Any increase in the number of customers on the routes is due wholly to the fortuity of new construction of homes on the route. Routes are initially established and assigned solely by the [Company] and have been reduced, altered or revoked by the [Company] unilaterally. Thus, the record establishes that the carriers' risk of loss and capacity to draw upon personal initiative to increase his earnings are minimized to a significant extent by the [Company's] practices and policies. Furthermore, carriers have no proprietary interest in their routes and the [Company] maintains a practice of issuing instructions to carriers regarding the manner in which inserts are to be handled for certain customers ... and in which actual delivery of papers to certain customers is to be accomplished. Although the carriers do not have daily contact with the [Company's] circulation manager and the carriers retain sole authority to utilize the control substitutes and helpers on their routes, provide and maintain their own equipment, are not carried on the [Company's] payroll, enjoy no fringe benefits, are not subject to the usual payroll deductions, and within certain limitations set their own working hours, these factors are not peculiar to independent contractor status and are not uncommon in employment relationships in this industry or enterprise.

*St. Charles Journal, Inc.*, No. 14-RC-9396 (Apr. 24, 1981) (Regional Director's Decision and Direction of Election, Region 14). After carefully reviewing the evidence of record, including the factors tending to indicate independent contractor status, *see Congress of Independent Unions v. NLRB*, 620 F.2d 172, 175 (8th Cir. 1980), we conclude that substantial evidence supports the Board's finding that the newspaper carriers in question were employees of the Company. While we may have taken a different view of the evidence adduced at the hearing were the matter before us de novo, we will not overturn the Board's choice between the two conflicting views of the issue presented by this case since substantial evidence establishes that the Company issued sufficiently detailed instructions and standards concerning the delivery of newspapers and advertising supplements to warrant the Board's finding that the Journal had the right to control the carriers' activities.

Accordingly, we deny the petition for review of the Board's order and grant the application for enforcement.