NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CAMPBELL–HARRIS ELECTRIC, INC.,
and Campbell Electric, Respondents.

No. 83–1059.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1983.

Decided Oct. 21, 1983.

---

1. The Hon. Joseph E. Stevens, Jr., United States District Judge for the Western and Eastern Districts of Missouri.

Andrew Tranovich, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., for N.L.R.B.

Richard L. Spearman, Gilker & Swan, Fort Smith, Ark., for respondents Campbell-Harris Elec., Inc. and Campbell Elec.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

HEANEY, Circuit Judge.

The National Labor Relations Board (Board) applies to this Court for enforcement of an order[1] requiring respondents Campbell-Harris Electric, Inc., and Campbell Electric, Inc., to: (1) cease and desist from various unfair labor practices; (2) offer Coy McKee and Frank Maples reinstatement to their former jobs or substantially equivalent positions, and make them whole for lost earnings and benefits; (3) make all unit employees whole for wages and benefits lost as a result of the respondents' failure to honor the contract with Local 700, International Brotherhood of Electrical

1. The Decision and Order of the National Labor Relations Board (Board) is styled *Campbell-* *Harris Electric, Inc.,* 263 N.L.R.B. No. 167 (1982).

Workers, AFL–CIO (Union); (4) make contributions owing unit employees and the Union for past benefits unlawfully withheld; (5) reimburse the Union for losses resulting from the respondents' failure to honor the dues-deduction authorizations of unit employees; (6) recognize and bargain with the Union; (7) preserve all records necessary to comply with the Board's order; (8) post copies of notices informing unit employees of their rights and the respondents' obligations; and (9) notify the Board of actions taken to comply with its order. We grant the Board's application.

From 1967 through June 29, 1979, Campbell-Harris Electric engaged in electrical contracting work from its Fayetteville, Arkansas, headquarters. Tom Campbell and L.W. Harris each owned forty-nine percent of the company, with their wives owning one percent each respectively. Campbell and Harris also had substantial ownership interests in Northwest Systems, Inc., a non-union business engaged in air conditioning installation and residential electrical work and occupying another building on the same premises from which Campbell-Harris Electric operated. In 1968, Campbell-Harris Electric signed its first collective bargaining agreement with the Union. In 1973, the company authorized the National Electrical Contractors Association, Inc. (NECA), a multi-employer bargaining organization, to represent it in negotiations with the Union. In 1978, NECA negotiated a contract on behalf of the company to be effective from September 1, 1978, through August 31, 1980.

By the spring of 1979, Campbell-Harris Electric experienced difficulty in submitting successful bids for electrical contracting jobs. Campbell and Harris decided to dissolve the company, but at the same time Campbell decided to form a "new" business which performed the same services as Campbell-Harris Electric. On May 2, 1979, he filed articles of incorporation for Campbell Electric. Campbell, his wife, and his son were sole shareholders in the corporation. The address for Campbell-Harris Electric was given as the principal place of business for Campbell Electric.

On June 29, 1979, Campbell-Harris Electric ceased operations. Many of its assets were distributed substantially equally between Campbell and Harris. Certain items of personal property were distributed to the men jointly. The real property owned by Campbell-Harris Electric was distributed to the men and their wives jointly.

On or soon after July 1, 1979, Campbell Electric began operations as a nonunion shop at Campbell-Harris Electric's old location. Northwest Systems continued to operate as a nonunion shop from the other building on the same premises. Both Campbell Electric and Northwest Systems paid monthly rent into a joint account for the benefit of Campbell, Harris, and their wives. Shortly after Campbell Electric began business, Campbell divested himself of his approximately one-third interest in Northwest Systems.

Campbell Electric assumed the contractual obligations of Campbell-Harris Electric, which consisted primarily of four unfinished projects. It agreed to split the profits from these projects between Campbell and Harris individually. Each man received in excess of $29,000 from this arrangement as of the date of the hearing before an Administrative Law Judge (ALJ) on May 8, 1980.

At its close, Campbell-Harris Electric employed one secretary and four electrical construction workers. Campbell spoke with each of these employees regarding future employment with Campbell Electric. He never told them that Campbell Electric would be run on a union basis similar to that of Campbell-Harris Electric; in fact, the employees testifying before the ALJ stated that they were aware that Campbell Electric would be an open shop before declining the offer to work for that company. At its opening, Campbell Electric employed Campbell-Harris Electric's secretary, one of its electrical construction workers, and three new workers. Campbell Electric has at all times since its inception been run as a nonunion shop.

The Union filed a charge on November 5, 1979, amended on December 13, 1979, alleg-

ing that the respondents violated subsections 8(a)(1) & (a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) & (a)(5) (1976), by refusing to recognize and bargain with the Union after June 29, 1979. The charge also alleged that Campbell Electric's refusal to hire three of Campbell-Harris Electric's former employees—Coy McKee, Frank Maples, and Budgie L. Harris—on a union basis violated subsections 8(a)(1) & (a)(3) of the NLRA, *id.* § 158(a)(1) & (a)(3). On September 17, 1982, the Board adopted in part the recommendations of an ALJ, finding that Campbell Electric was in fact an alter ego of Campbell-Harris Electric and thus was bound to recognize and bargain with the Union and to abide by the contract effective until August 31, 1980. The Board held that the respondents, as alter egos, violated subsections 8(a)(1) & (a)(5) in failing to meet these obligations. It further held that the respondents violated subsections 8(a)(1) & (a)(3) by constructively discharging Coy McKee and Frank Maples, who refused to work for Campbell Electric on a nonunion basis.[2] The respondents contest liability under any provisions of the NLRA in this enforcement proceeding.

■ The respondents do not seriously dispute the Board's holding that companies which are in fact alter egos cannot engage in conduct such as the respondents' consistent with the NLRA. They assert, however, that the Board's finding of alter ego status herein is erroneous. In this regard, we must enforce the Board's order if supported by substantial evidence on the record as a whole, even if we might have reached a different conclusion on a de novo review of the evidence. *St. Charles Journal, Inc. v. NLRB,* 679 F.2d 759, 761 (8th Cir.1982).

The Supreme Court discussed the alter ego doctrine in terms of an employer's attempt to avoid a reinstatement order by dissolving one corporate form and creating another in *Southport Petroleum Co. v. NLRB,* 315 U.S. 100, 101–104, 62 S.Ct. 452, 453–454, 86 L.Ed. 718 (1942). There, the Court stated,

> If there was merely a change in name or in apparent control there is no reason to grant the petitioner relief from the Board's order of reinstatement; instead there is added ground for compelling obedience. Whether there was a bona fide discontinuance and a true change of ownership—which would terminate the duty of reinstatement created by the Board's order—or merely a disguised continuance of the old employer * * * is a question of fact properly to be resolved by the Board * * *.

*Id.* at 106, 62 S.Ct. at 455. The Court has likewise recognized that "mere technical change[s] in * * * structure or identity" do not relieve an alter ego employer from "all the legal and contractual obligations of the predecessor." *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974) (citations omitted).

■ For federal labor law purposes, a finding that two companies are in fact alter egos is proper if based upon substantial identity in terms of corporate ownership, management, business purpose, operation, equipment, customers, and supervision. *See NLRB v. Ozark Hardwood Co.,* 282 F.2d 1, 7 (8th Cir.1960). *See also NLRB v. Al Bryant, Inc.,* 711 F.2d 543, 553–554 (3d Cir. 1983); *Crawford Door Sales Co.,* 226 N.L.R.B. 1144, 1144 (1976). The respondents agree that Campbell Electric shared Campbell-Harris Electric's business purpose, mode of operation, and method of supervision, and that it used equipment and served customers formerly associated with Campbell-Harris Electric. They assert, however, that the two companies' ownership and management were not substantially identi-

---

**2.** The Board disagreed with the ALJ regarding the constructive discharge of Budgie L. Harris. The Board held that Budgie, son of L.W. Harris, was not protected from constructive discharge by the respondents by virtue of 29 U.S.C. § 152(3) (1976), which excludes "any individu-al employed by his parent or spouse" from the class of employees protected by the National Labor Relations Act (NLRA). This holding is not at issue in the present enforcement proceeding.

cal and that we therefore should reverse the Board's finding of alter ego status.

■ The ALJ found, and the Board agreed, that the ownership and management of Campbell-Harris Electric were substantially identical to that of Campbell Electric. Harris did handle the financial affairs of Campbell-Harris Electric and perform some limited work in the field for that company, but the ALJ found that Campbell's assumption of all of Harris's duties for Campbell Electric did not reflect a significant change in operational structure from that of Campbell-Harris Electric. Substantial evidence supports this finding, which in turn evinces the substantial identity in management of the respondents' businesses. In addition, the ALJ and the Board correctly held that the test of alter ego status is a flexible one, such that lack of identical corporate ownership will not bar a finding of alter ego status. *See J.M. Tanaka Construction, Inc. v. NLRB,* 675 F.2d 1029, 1035 (9th Cir.1982); *Crawford Door Sales Co., supra,* 226 N.L.R.B. at 1144. Thus, the fact that Campbell-Harris Electric was in effect a partnership between Campbell and Harris while Campbell Electric was in effect a sole proprietorship of Campbell, even if evidence contrary to a finding of total identity in ownership, will not alone defeat the alter ego finding herein.[3] Viewing the record as a whole, especially in light of Harris's sharing in the profits of contracts completed by Campbell Electric in amounts exceeding $29,000, we hold that substantial evidence supports the Board's finding of sufficient identity in ownership to evince an alter ego relationship between the respondents. Therefore,

we agree that their refusal to recognize and bargain with the Union after June 29, 1979; their unilateral disregard of the terms of the September 1, 1978, through August 31, 1980, agreement as of July 1, 1980; and their constructive discharges of McKee and Maples violated the provisions of the NLRA.[4]

Finally, the respondents contend that, assuming the Board's findings on liability are correct, we should remand for further evidence regarding the amount of backpay, benefits, employer contributions, and similar losses owing McKee, Maples, the Union, and other unit employees in order to remedy the respondents' violations. We agree with the Board that these disputes cannot be resolved on this record and may be considered more appropriately in compliance proceedings before the Board if not otherwise agreed upon by the parties involved. *See Great Chinese American Sewing Co. v. NLRB,* 578 F.2d 251, 255–256 (9th Cir.1978) (per curiam).

For the foregoing reasons, the Board's application for enforcement of its September 17, 1982, order is granted.

---

**3.** The Board decisions cited by the respondents do not support the proposition that identity of corporate ownership is a necessary prerequisite to a finding of alter ego status. In *John Fender Electric Co.,* 244 N.L.R.B. 957 (1979), the Board relied on factors other than the different ownership of employers in that case to support its finding of no alter ego relationship. *Id.* at 957 n. 1. Furthermore, in *Clinton Foods, Inc.,* 240 N.L.R.B. 1246 (1979), *pet. for review denied sub nom. Amalgamated Meat Cutters & Butcher Workmen of North America v. NLRB,* 663 F.2d 223 (D.C.Cir.1980), the Board relied upon one of its prior decisions which explicitly held that

identical corporate ownership was not absolutely necessary to an alter ego finding. *Id.* at 1246 n. 2, *citing Crawford Door Sales Co.,* 226 N.L.R.B. 1144 (1976).

**4.** We have considered the respondents' arguments that the Union "acquiesced" in Campbell Electric's operation on a nonunion basis and that the Union should be equitably estopped from bringing the present unfair labor practices charge. We find no merit, factually or legally, to either of these claims.