**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 453, Respondent.**

**No. 83-1723.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1984.

Decided March 14, 1984.

Daniel R. Pollitt, Atty., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Law Offices of Benjamin J. Francka, Benjamin J. Francka, Springfield, Mo., for Intern. Broth. of Elec. Workers Local Union No. 453, respondent.

Before ROSS and ARNOLD, Circuit Judges, and HARRIS, District Judge.*

ROSS, Circuit Judge.

This case is presented as an application for enforcement of a final decision and order of the National Labor Relations Board (Board),[1] pursuant to Section 10(e) of the National Labor Relations Act of 1947 (Act), 29 U.S.C. § 160(e) (1973). For the reasons stated herein the Board's petition for enforcement is granted.

**Background**

Southern Sun Electric Corporation (Sun) and Local 453 of the International Brotherhood of Electrical Workers (IBEW) have been engaged in a bitter labor dispute for several years.[2] In this particular dispute Sun alleged that Local 453 fined Samuel Miller, a union member, in retaliation for his having engaged in certain protected activities, thereby violating Section 8(b)(1)(A) of the Act.[3] The asserted protected activities were: (1) testifying at a 1978 hearing in *Sachs Electric Co. (International Brotherhood of Electrical Workers), Local 453*, 248 N.L.R.B. 669 (1980), *aff'd*, 668 F.2d 991 (8th Cir.1982), wherein Local 453 was found to have unlawfully prevented two travelers from signing a hiring hall referral list; (2) filing a complaint with the Union's Appeal Committee on March 19, 1979, regarding his right as a traveler to sign the referral list; (3) causing an Unfair Labor Practice (ULP) charge to be entered against the Union on March 20, 1979, for discriminating against travelers; and (4) testifying at an arbitration hearing against the Union on July 10, 1979.[4]

**Facts**

Miller joined the IBEW in Los Angeles, California, in 1958. In 1976 he moved to Springfield, Missouri, and began working as a traveler, *i.e.*, without shifting his membership.

On March 14, 1979, Miller, then on the Group II hiring hall referral list, requested that the Union's business manager, Mr. Hensley, place him on the Group I roster. Hensley attempted to discourage Miller, reasoning that unemployed members of Local 453 would not like his being placed on the Group I list. On March 16, Miller again approached Hensley regarding the

---

* The Honorable Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The opinion of the Board is reported at 263 N.L.R.B. 862 (1982).

2. *See Local 453, International Bhd. of Elec. Workers, (Southern Sun Elec. Corp.)*, 237 N.L.R.B. 829 (1978), *aff'd, Southern Sun Elec. Corp. v. NLRB*, 620 F.2d 170 (8th Cir.1980) (unlawful secondary boycotting); *International Bhd. of Elec. Workers, Local 453 (Southern Sun Elec. Corp.)*, 242 N.L.R.B. 1130 (1979), *rev'd, Congress*

*of Indep. Unions v. NLRB*, 620 F.2d 172 (8th Cir.1980) (unlawful recognitional picketing); *International Bhd. of Elec. Workers, Local 453 (Southern Sun Elec. Corp.)*, 252 N.L.R.B. 719 (1980) (unlawful recognitional picketing).

3. Section 8(b)(1)(A) makes it unlawful for a labor union to restrain or coerce employees in the exercise of the rights guaranteed by the Act. *See* 29 U.S.C. § 158(b)(1)(A) (1973).

4. It was subsequently revealed that Miller had not testified at this hearing although he did appear on the grievant's behalf.

Group I list. Hensley told him that he was not qualified to be placed on the list, but if he did not like that determination, he could appeal to the Union's Joint Appeal Committee, which Miller did. Subsequently, Miller filed a ULP charge against Local 453 for discriminating against travelers, but withdrew the charge after being placed on the Group I list. When Miller was put on the list Hensley warned him that he was "making a big mistake."

In May 1979 Miller went to work for Sun without the knowledge of the Union. At that time Sun's employees were organized by another union, and Sun was actively engaged in litigation against Local 453. Don Day, a former officer of Local 453, observed Miller working on a Sun job site May 29, 1979. On July 16, 1979, he filed an internal union charge against Miller for working for an organization opposed to the IBEW.[5]

On September 27, 1979, the Union's Trial Board conducted a hearing, which Miller did not attend. The Board found him guilty of violating the Union's Constitution. He was fined $1,000, with the fine to be paid in monthly installments.[6]

On October 2, 1979, Miller was informed of the Trial Board's decision and immediately appealed to the International. On June 17, 1980, the IBEW president determined that the October 2 ruling was academic because Miller's Los Angeles local had dropped him from its roster September 30, 1979. Miller was then refunded the money he had paid in fines.

Sun filed a charge with the Board on January 16, 1980, alleging that Local 453 had assessed the fines against Miller in retribution for his engaging in protected activities, and therefore, the Union had violated Section 8(b)(1)(A) of the Act.

**Procedural History**

In proceedings before an Administrative Law Judge (ALJ), the Union contended that the disparity in fines was a result of both Miller's failure to appear at the hearing, and his employment at Sun, a company particularly hostile toward the Union. Local 453 denied that it fined Miller because he engaged in the alleged protected activities.

The General Counsel (GC) contended that the fines were a result of the alleged protected activities. In the alternative, the GC argued that the fines were unlawful under *Sachs Elec. Co., supra,* wherein the Union was found to have prevented travelers from signing the Group I list, thereby impairing their job prospects. Accordingly, the GC argued any valid reason for fining Miller was removed.

The ALJ rejected the GC's first argument stating:

Given that the charges and fine against Miller occurred in the context of Respondent's resumed picketing and other activity against Southern Sun, that the professed basis for the action against Miller was his working for Southern Sun, * * * and that a deep and longstanding animosity existed between Respondent and Southern Sun, it can only be concluded that the charges and fine would have happened even absent Miller's assertedly protected activities. That Miller was

---

**5.** Specifically, Miller was charged with violating the following provisions of the Union's Constitution: Article 22, section 4, which requires members to "promise and agree to and abide by the Constitution and laws of the IBEW and its local unions"; Article 27, section 1, subsection 3, that proscribes the "violation of any provision of this Constitution and the rules herein, or the bylaws, working agreements, or rules of a [local union]" (L.U.); subsection 10 of that article and section which bans "working in the interest of any organization or cause which is detrimental to, or opposed to, the IBEW"; and subsection 21 which prohibits "working for any individual or company declared in difficulty with the L.U. or the IBEW, in accordance with this Constitution."

**6.** Two other union members had previously been fined $375 and $500 respectively for violating three of the four provisions for which Miller was fined $800. Admittedly the first individual had demonstrated extenuating circumstances, and neither involved Sun, with whom Local 453 had a labor dispute. The second, however, like Miller, had failed to attend his hearing or offer an excuse.

fined more harshly than others * * * is * * * consistent with this analysis * * *. Likewise, the ALJ rejected the GC's alternative contention stating that the issue was precluded from being raised by Section 10(b) of the Act.[7] Despite the foregoing, the ALJ concluded that Local 453 had violated the Act:

> As previously noted, the Board found in [Local 453, IBEW (Southern Sun Electric Corporation), 252 NLRB 719 (1980)], that Respondent's picketing of Southern Sun around the time Miller was charged and fined had a proscribed recognitional object, therefore violating Section 8(b)(7)(A). It is fair to infer that the fine, happening in the context of this unlawful picketing and because Miller worked for Southern Sun, was in furtherance of the proscribed object as well, and so was itself unlawful.

The Union filed exceptions with the Board claiming that the ALJ went beyond the scope of the pleadings and trial in finding that the fines were illegal. Local 453's position was that once the ALJ resolved the threshold question in the Union's favor—i.e., the fines were not a result of the alleged protected activities—any further inquiry was unwarranted.

The Board affirmed the result reached by the ALJ but modified the reasoning:

> We find, instead, that Respondent opportunely seized upon Miller's asserted violation of its constitution as a vehicle to conceal its retaliation against him because he engaged in the aforesaid protected activities. We further find that Respondent violated Section 8(b)(1)(A) of the Act by its failure to tender Miller job referrals through its hiring hall and by its refusal to register him on the priority referral roster for which he was qualified. We also find that such conduct severely impaired his job prospects and placed him in the position of having to take any available employment, and that, by placing Miller in that position and then fining him because of it, Respondent further violated Section 8(b)(1)(A) of the Act.

**Issues**

On appeal the Union presents two issues. First, whether the Board erred in finding that the fines were in retaliation for Miller's engaging in protected activities. Second, whether the Board's determination that the Union violated the Act by failing to tender Miller job referrals, and by refusing to register him on the referral roster, was beyond the scope of the complaint.

**Discussion**

 It is well established that an order of the Board must be enforced if it is supported by substantial evidence on the record taken as a whole. NLRB v. Campbell-Harris Electric, Inc., 719 F.2d 292, 295 (8th Cir.1983). Furthermore, while the Board's established policy is not to overrule an ALJ's resolution with respect to credibility unless the evidence clearly shows the resolution to be incorrect, see Universal Camera Corp. v. NLRB, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951), we are not here concerned with a situation where credibility is involved. The ALJ resolved the issues of credibility in Miller's favor, as did the Board. The Board simply interpreted the facts differently than the ALJ. In this situation, the Board is free to draw its own inferences from the evidence, and if those inferences are supported by the record, the Board's findings will be upheld. See NLRB v. International Brotherhood of Electrical Workers, Local 265, 604 F.2d 1091, 1096 (8th Cir.1979); NLRB v. Pacific Grinding Wheel Co., Inc., 572 F.2d 1343, 1347 (9th Cir.1978).

 Several facts in the record support the Board's conclusion that Local 453 fined Miller in retaliation for his engaging in the asserted protected activities. First, the Union clearly treated travelers differently

---

7. Section 10(b) of the Act operates as a statute of limitations and requires that a ULP charge be filed within six months of the act giving rise to the charge. 29 U.S.C. § 160(b) (1973). See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982); NLRB v. Local 264, Laborers' Int'l Union, 529 F.2d 778, 785 (8th Cir.1976).

than their local members, *e.g.*, *Sachs Electric, supra*, 248 N.L.R.B. 669; second, there was an inexplicable two-month delay between the time Day saw Miller working for Sun and the filing of the internal union charge; third, the charge was filed six days after Miller appeared at a grievance hearing on behalf of a fellow traveler; fourth, the disparity in fines between Miller and the other two violators; finally, the past practices and hostilities demonstrated toward Miller by the Union's business manager, Hensley.

■ While a union can discipline members who violate its constitution or bylaws, even if those members are engaged in protected activities, it cannot do so if the alleged violation is pretextual. *See NLRB v. International Brotherhood of Electrical Workers, Local 73*, 714 F.2d 870, 871–72 (9th Cir.1980). Here, there is substantial evidence to support the Board's finding that the fines were issued because of the protected activities and not because of the violations of the Union's Constitution. We will not disturb this determination by the Board. *See, Campbell-Harris, supra*, 719 F.2d at 295.

Local 453 also challenges the Board's ruling that the Union unlawfully refused to register Miller on the hiring hall roster. Their position is that the Board exceeded the scope of the pleadings in ruling on this issue.[8]

The Board contends that we are without jurisdiction to consider the Union's claim because Local 453 failed to file a motion for reconsideration as provided for in 29 C.F.R. § 102.48(d)(1) (1982). The Board directs our attention to Section 10(e) of the Act which reads in pertinent part: "No objection that has not been urged before the Board * * * shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e) (1973). As no extraordinary cir-

cumstances are present here, we believe the Supreme Court's opinion in *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982), is particularly instructive.

In *Woelke*, the Court held that Section 10(e) precluded the court of appeals from addressing an issue that the petitioner could have, but did not raise before the Board in a motion for reconsideration. This was true even though the Board decided an issue which neither party had raised. The Court opined:

> Petitioner Woelke asks us to reverse the Court of Appeals' holding that unions do not violate § 8(b)(4)(A) when they picket to obtain a subcontracting clause sheltered by the construction industry proviso. However, the Court of Appeals was without jurisdiction to consider that question. The issue was not raised during the proceedings before the Board, either by the General Counsel or by Woelke. Thus, judicial review is barred by § 10(e) of the Act, 29 U.S.C. § 160(e).
> * * *
> The § 10(e) bar applies even though the Board held that the picketing was not banned by § 8(b)(4)(A). * * * Woelke could have objected to the Board's decision in a petition for reconsideration or rehearing. The failure to do so prevents consideration of the question by the courts. * * *

456 U.S. at 665–66, 102 S.Ct. at 2082–83 (citations omitted).

■ In the instant case neither party raised to the Board the issue surrounding the Union's failure to register Miller on the hiring hall roster. Nonetheless, the Board ruled on this issue in a manner adverse to Local 453. The Union, however, did not object to this ruling in a petition for reconsideration. *Woelke* presented essentially the same factual pattern. On this basis, we hold that Section 10(e) precludes us from addressing the challenge to the Board's determination that the Union un-

---

8. The ALJ held that Section 10(b) of the Act precluded a determination of this issue; therefore, we may assume that the issue was raised in the litigation below. Accordingly, it would seem that Local 453 should not have been un-

fairly surprised by a Board determination on this point. *See, e.g., Admiral Merchants Motor Freight, Inc. and Machinist, Local 701*, 111 L.R. R.M. (BNA) 1526, 1528 & n. 4 (1982).

lawfully refused to register Miller.[9] *See NLRB v. Honeywell, Inc.*, 722 F.2d 405, 407 n. 3 (8th Cir.1983). *See also* C. MORRIS, THE DEVELOPING LABOR LAW 1710–12 (2d ed. 1983).

**Conclusion**

There is substantial evidence in the record to support the Board's determination that Local 453 unlawfully fined Miller for engaging in certain protected activities. Additionally, Local 453's failure to petition for reconsideration of the Board's determination that the Union unlawfully refused to register Miller, precludes us from considering that question.

Accordingly, the August 31, 1982 Order of the Board is enforced.

**9.** The Board urges us to hold that the Union waived the Section 10(b) statute of limitations defense because they did not assert it as an affirmative defense below. We specifically decline to do so, but note instead that the Union has not raised the issue in this court. Furthermore, we could not reach this issue if it had been raised because it was not presented to the Board in a motion for reconsideration. *See Woelke, supra,* 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398.