ROGERS, Circuit Judge,
concurring in part, concurring in the judgment.
I.
Section 10(e) of the National Labor Relations Act limits the court’s jurisdiction to issues that have been presented to the Board. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982). In cases where an issue is raised sua sponte by the Board, parties are generally required to file a motion for reconsideration in order to preserve it. Spectrum Health—Kent Cmty. Campus v. NLRB, 647 F.3d 341, 349 (D.C.Cir.2011). A narrow exception exists in “extraordinary circumstances,” 29 U.S.C. § 160(e), where a motion for reconsideration would be futile. Thus, in NLRB v. FLRA, 2 F.3d 1190, 1195 (D.C.Cir.1993), although there was no objection to the Federal Labor Relations Authority’s determination that a proposal was an “appropriate arrangement,” the court nevertheless concluded that the issue was reviewable. The FLRA had previously and frequently held identical proposals were “appropriate arrangements” and had raised the issue sua sponte. In those circumstances, the court held that a rehearing petition would have been “patently futile.” Id. at 1196-97.
So too, here. The Board sua sponte required HTH Corporation to reimburse the union and the Board’s general counsel for their attorneys’ fees and litigation costs. HTH Corp., 361 NLRB No. 65 (2014). For more than a decade, the Board has rejected the objections that HTH now raises, namely, that the Board lacks “inherent authority” to order reimbursement of litigation expenses. See, e.g., Camelot Terrace, 357 NLRB No. 161, at *6 (2011); Teamsters Local Union No. 122, 334 NLRB 1190, 1193 (2001); Alwin Mfg. Co., 326 NLRB 646, 647 (1998), enforced, 192 F.3d 133 (D.C.Cir.1999); Lake Holiday Manor, 325 NLRB 469, 469 & n. 5 (1998). The Board’s decision here followed only three years after Camelot Terrace, in which the Board ruled that notwithstanding its lack of statutory authority to order the payment of attorneys’ fees, see Unbelievable, Inc. v. NLRB, 118 F.3d *685 795 (D.C.Cir.1997), it could award fees “as a function of the inherent authority to preserve the integrity of its processes.” Camelot, 357 NLRB at *8. Indeed, the Board’s brief to this court reaffirms that it adheres to its long-standing position that it possesses inherent authority when a respondent engages in the type of egregious conduct in which the Board found HTH has engaged for a decade. HTH Corp., 361 NLRB No. 65 at *1 & n. 4. Under these circumstances, I concur in holding that it would have been futile for HTH to move for reconsideration by the Board, and the court has jurisdiction to consider HTH’s challenge to the Board’s sua sponte imposition of attorneys’ fees and costs.
On the merits, I concur in granting the petition with respect to attorneys’ fees and costs in light of Unbelievable, 118 F.3d 795, which must be read in view of Nepera Chemical, Inc. v. Sear-Land Service, Inc., 794 F.2d 688, 694 n. 56 (D.C.Cir.1986). See also Fox v. Vice, 563 U.S. 826, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011); Op. at 678-81; id. at 674-75.
II.
The Board’s order directing that either a company Vice President or, at HTH’s option, a Board representative read the Board’s order is a permissible exercise of the Board’s broad remedial authority. See Federated Logistics & Operations v. NLRB, 400 F.3d 920, 929-30 (D.C.Cir.2005).
A little history is in order. See Op. at 674. In International Union of Electrical, Radio & Machine Workers v. NLRB, 383 F.2d 230, 233 (D.C.Cir.1967) (“IUE ”), the court rejected a notice-reading remedy in which the Board had ordered the employer to read the Board’s order to its employees on company time. The court concluded that this “fourth promulgation” of the Board’s order was “inappropriate to achieve the sought-after goal of dissemination of information concerning employees’ rights.” Id. at 232-33. The court stated “further” that the public reading would be humiliating and degrading to the employer and “undoubtedly have a lingering effect on future management-union relations. Id. at 233. It also noted a circuit split on the issue. Id. at 233 n. 5. Although acknowledging the possibility of extreme conduct that would justify the novel and drastic step, the court concluded that “[t]he ignominy of a forced public reading and a ‘confession of sins’ by any employer, any employee, or any union representative makes such a remedy incompatible with the democratic principles of the dignity of man.” Id. at 234. One member of the court, however, would have adopted a compromise, allowing the employer to decide to have a representative of the Board read the Board’s order, or would have remanded for the Board to consider this compromise. Id. (Wright, J., concurring in part and dissenting in part) (citing J.P. Stevens & Co. v. NLRB, 380 F.2d 292, 305 (2d Cir.1967)).
The Board subsequently determined that in some instances the public reading served a permissible purpose. This change was addressed in Teamsters Local 115 v. NLRB (Haddon House), 640 F.2d 392, 402-03 (D.C.Cir.1981). The Board, while acknowledging judicial doubts about the propriety of such an order, had concluded that where the employer had carried out an anti-union campaign there were circumstances where the employer itself must give its employees “reassurances that this campaign will end.” Id. at 402. Although other circuits generally approved the public reading order once the Board representative option became routine, see id., the Board concluded that would not suffice in these circumstances. The court acknowledged the Board’s broad *686 remedial powers and the court’s limited review, see id. at 399 (citing NLRB v. Gissel Packing Co., 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964)), and stated:
The Board’s remedy is admittedly strong medicine. But in the context of the severely chilling environment created by this Employer’s unfair labor practices, we cannot say it was superfluous to the cure. This is not a mere “additional” promulgation of the notice’s contents, but rather a deliberate attempt to alleviate the workers’ fears about the Employer’s intentions. The reading can do little to disrupt the already strained relationship between the Employer , and the Union, and it may be of substantial benefit to the employees. Whether or not this hope is realized, we cannot say that the Board was wrong to make an effort in that direction. This court acknowledged in [IUE] that there were conceivably cases where the need for the remedy would outweigh its oppressiveness and justify the public reading order. We believe that this is such a case.
Id. at 402-03.
The court declined to enforce a “highly unusual” feature of the public reading order, however. It noted that the Board had singled out a company’s chief executive officer to perform a public reading only once before, where the Board had emphasized the personal participation of the company president in the unfair labor practices. The court observed that, although “it was unnecessary to decide whether [such circumstances], or any circumstances whatsoever, could justify the startling innovation of the Board reading order directed at a specific individual,” here “the Board did not make a careful analysis of the necessity for [the company owner and president] to undertake the reading, and the record suggests no such necessity.” Id. at 403. The company president had personally performed only one unfair labor practice while other members of management engaged in numerous others. See id. The court concluded the negative aspects of the order, as identified in this court’s opinion in IUE, overwhelmed “the marginally greater impact” of having the company president read the order, and found it was “unjustified.” Id. at 403-04.
Since Teamsters, the court, like our sister circuits, has enforced a Board order that required a notice reading where the employer was afforded the option of having the notice read by a Board representative. See Federated Logistics & Operations, 400 F.3d at 929-30. Alternatively, the court has enforced notice-reading remedies that single out a high official of the employer where the record indicates “a particularized need does exist and that the reading is necessary ‘to dispel the atmosphere of intimidation created in large part by [the singled-out officer’s] own statements and actions.’ ” United Food & Commercial Workers Int’l Union v. NLRB, 852 F.2d 1344, 1348 (D.C.Cir.1988) (quoting Conair v. NLRB, 721 F.2d 1355, 1386-87 (D.C.Cir.1983), and citing IUE, 383 F.2d at 234); Teamsters, 640 F.2d 392.[1]
*687 As this history indicates, there is no ■need to impugn the court’s reconciliation of its precedent with the congressional design granting the Board broad power and discretion to devise remedies to effectuate the policies of the National Labor Relations Act. See Gissel Packing Co., 395 U.S. at 612 n. 32, 89 S.Ct. 1918; Fibreboard Paper Prods. Corp., 379 U.S. at 216, 85 S.Ct. 398. Because the Board’s notice-reading order is consistent with our precedent enforcing the compromise option, there is no need to imply that the Board’s judgment in specific egregious circumstances has abandoned democratic principles. See Op. at 677-78. The record supports the Board’s conclusion that a notice-reading remedy was warranted by the egregious conduct of HTH and its Vice President’s pervasive unlawful conduct over an extended period of time. See Op. 671-72. HTH has not challenged any factual finding by the Board.
Accordingly, I concur in part and concur in the judgment.

. In United Food, the court observed:
National labor law has undergone many changes from the early days of the Wagner Act. Throughout this period, courts have acknowledged the broad remedial discretion that the Board must have to effectuate the policies of the statute. Such discretion makes it difficult to provide bright-line limits on the remedies that the Board can utilize. As the decisions of this court in Teamsters and Conair demonstrate, unique and specific facts of a case will more often than not provide the measure that allows a remedy in one case and precludes it in *687 another. Such are the vagaries of judicial review of the delicate fabric of our national • labor law.
852 F.2d at 1349.